Vaughn Fisher, ISB No. 7624
Christopher Brown, ISB No. 9328
FISHER HUDSON SHALLAT
950 W. Bannock St., Ste. 630
Boise, Idaho 83702
Telephone: (208) 345-7000
Facsimile: (208) 514-1900
vaughn@fisherhudson.com
chris@fisherhudson.com
service@fisherhudson.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEVIN CHURCHMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL HOUSECHECK CORPORATION, INC., an Idaho Business Corporation,<br><br>Defendant. | Civil Case No.: 1:20-cv-560<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff Kevin Churchman, by and through his counsel of record, FISHER HUDSON SHALLAT, and complains and alleges against Defendant, National HouseCheck Corporation, Inc., as follows:

### I.   INTRODUCTION - NATURE OF THE ACTION

This is an action for damages due to deprivation of rights secured by the federal Fair Labor Standards Act ("FLSA") and the Idaho Wage Claim Act ("IWCA") to recover from Defendant unpaid wages, reasonable attorneys' fees and costs. The case arises out of National HouseCheck Corporation's ("HouseCheck" or "Defendant") failure to pay the salary of its employee, Kevin

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

Churchman ("Mr. Churchman" or "Plaintiff") over the course of a twelve-month period of employment.

Consistently, over the sixteen-month course of his employment, Mr. Churchman's anxious requests for overdue wages were met with well documented promises of payment from his superiors and various other HouseCheck officers. However, instead of honoring its employment contract, HouseCheck suddenly terminated him and for the first time alleged that he was not entitled to payment for his year of employment because he was not an employee.

## II. PARTIES & JURISDICTION

1. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, because the action arises under a federal statute, 29 U.S.C. § 216(b). The Court has supplemental jurisdiction over his state law claims pursuant to 28.U.S.C. § 1367.

2. Plaintiff Kevin Churchman ("Mr. Churchman" or "Plaintiff") is an individual residing in Ada County, Idaho and an "employee" of National HouseCheck Corporation ("HouseCheck") or ("Defendant") as that term is defined in 29 U.S.C. § 203(e)(1).

3. Defendant is an Idaho corporation with business operations in six states and is subject to personal jurisdiction because this case arises from its wrongful conduct in Idaho, where it maintains its principle place of business and employed Plaintiff. Defendant is subject to the requirements of the FLSA because it is an "employer" pursuant to 29 U.S.C. § 203(d), "engaged in commerce or in the production of goods for commerce" as that term is defined in 29 U.S.C. § 203(s)(1)(A)(i).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

## III. GENERAL ALLEGATIONS

**COMPLAINT AND DEMAND FOR JURY TRIAL - 2**

5. On May 17, 2019, Defendant's CFO, Bill Klehm, verbally offered Plaintiff employment as Director of Field Marketing with HouseCheck to begin immediately, with a salary of $120,000 per year paid semi-monthly. The position was classified as exempt.

6. On May 20, 2019, Plaintiff began working for Defendant under direct supervision of HouseCheck Director of Government Services, Francy Forbes.

7. On May 27, 2019, Plaintiff was provided an office in Defendant's Boise headquarters along with a key card to access to the building and parking garage.

8. On September 9, 2019, Defendant provided Plaintiff an employment contract dated August 26, 2019 which included a base salary of $120,000 per year (the "Employment Contract").

9. The Employment Contract awarded Plaintiff medical, dental, and vision coverage and 15,000 units of restricted company stock, with vesting dates at twelve and fifteen months of employment.

10. On November 2, 2019, having yet to receive payment of wages as agreed to in the Employment Agreement, HouseCheck President, Dennis Conforto, asked Plaintiff if he would consider taking additional stock in lieu of past due compensation. Plaintiff declined, stating that he needed money, as he had been living on savings since joining the HouseCheck. Mr. Conforto agreed to expedite payment of the overdue compensation.

11. Defendant's day to day duties as Director of Field marketing included responsibilities including but not limited to:

  a. Working a set schedule of more than forty hours per week Monday through Friday at Defendant's Boise headquarters;

  b. Required participation in Defendant's scheduled meetings, planning sessions, presentations, trainings and trade shows;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

    c. Management of various marking initiatives requiring written and oral marketing reports on a weekly and monthly basis.

12. By December 16, 2019, Plaintiff still had not received any payment from HouseCheck, despite months of continuing requests to Defendant for payment of wages in arrears.

13. On December 16, 2019, in response to Plaintiff's requests for compensation, Chief Growth Officer and VP of Technology, Sean Parry ("Mr. Parry"), explained that unexpected financial troubles were to blame for the company's failure to compensate Plaintiff pursuant to his Employment Contract. Mr. Parry instructed Plaintiff to invoice HouseCheck for partial payment totaling $4,000 to hold him over until Defendant could pay past due wages owed.

14. Although frustrated that he would have to submit an invoice to collect past due wages, pursuant to Mr. Parry's direction, Plaintiff drafted an invoice for work performed between December 1, 2019 and December 15, 2019 at the rate of pay identified in his Employment Contract. Defendant subsequently provided Plaintiff a check for $4,000 on December 20, 2019. These were the only wages Plaintiff received up to that time.

15. On March 1, 2020, Plaintiff was awarded an additional 1830 units of restricted company stock.

16. After numerous requests to various HouseCheck managers for compensation remained unanswered, on March 23, 2020, Plaintiff requested payment directly from HouseCheck CFO, Tim McGraw ("Mr. McGraw").

17. Mr. McGraw explained that he could only authorize up to $10,000, which would only partially compensate Plaintiff, because a request of more than $10,000 necessitated approval by the Defendant's board.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

18. At Mr. McGraw's request, Plaintiff created and submitted an additional invoice for work performed from February 24 to March 22, 2020, at the rate of pay identified in the Employment Contract. On March 26, 2020, Plaintiff received from Defendant a check for partial payment of his salary totaling $10,000.

19. On March 25, 2020, following his instruction to invoice HouseCheck for $10,000, Mr. McGraw texted Plaintiff, "Thanks for being patient. As soon as we have a windfall, I have you prioritized for more payments. Thx. Tim."

20. On April 27, 2020, HouseCheck President and CEO, Bill Klehm, provided Plaintiff a signed handwritten note stating, "[y]ou have been an amazing soldier. Sorry for the extended time without pay. Working hard to fix this."

21. On May 9, 2020, Plaintiff was provided a new employment contract titled "Revised Job Terms" ("Revised Employment Contract") which reduced his yearly salary to $24,000. The agreement stated "[i]f you do not choose to remain in this role pursuant to these revised terms, your employment will be terminated."

22. Fearing that he would not be paid the back wages owed to him if terminated, Plaintiff signed executed the Revised Employment Contract on May 11, 2020.

23. Beginning on May 11, 2020, Defendant began compensating Plaintiff in accordance with the $24,000 salary identified in the Revised Employment Contract although Plaintiff had still not received compensation for his initial year of employment at $120,000 per year, as required by the original Employment Contract.

24. Despite Defendant's failure to compensate Plaintiff wages owed for his first year of employment, Plaintiff remained optimistic that HouseCheck would honor the Employment Contract. On numerous occasions, Defendant's officers promised Plaintiff he would receive

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

payment as soon as possible. Never was Plaintiff's right to back wages owed pursuant to his Employment Contract, questioned by anyone from HouseCheck during his term of employment.

25. On June 5, 2020, Mr. McGraw drafted a letter on behalf of Plaintiff to Plaintiff's mortgage lender stating, "this letter is to confirm that through Kevin's service to National HouseCheck Corporation, he has earned deferred income of $107,000 for [sic] which remains due to Kevin as part of his total compensation package. He has also received certain restricted stock unit grants for his services to the company as well."

26. On October 9, 2020, Plaintiff met with HouseCheck investor Dan Harrington to discuss the Defendant's failure to pay back wages due for his employment as Director of Field Marketing. Dan Harrington contacted Defendant's new CEO, Sharon O'Leary, to address the Defendant's failure to compensate Plaintiff.

27. On October 15, 2020, Plaintiff was terminated from HouseCheck by Mr. Parry. Mr. Parry stated only that the termination was unrelated to Plaintiff's performance. At this time Defendant required that Plaintiff return all company property including his keycard, computer and monitors.

28. Defendant did not make available to Plaintiff wages owed under the Employment Contract or the Revised Employment Contract at the time of termination or at any point thereafter.

29. On October 16, 2020, legal counsel for Plaintiff made a demand upon Defendant pursuant to Idaho Code § 45-601 et seq., requesting unpaid wages and the value of Plaintiff's vested stock within forty-eight hours. Defendant refused to pay Plaintiff's back wages as required by the Idaho Wage Claim Act.

IV. **CAUSES OF ACTION**
**COUNT I**
**VIOLATION OF FLSA'S MINIMUM WAGE PROVISIONS**
**[29 U.S.C. § 206]**

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

30. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

31. Defendant has willfully and intentionally engaged in a practice of violating the provisions of the FLSA, as detailed herein, by failing to pay Plaintiff minimum wage in accordance with § 206 of the FLSA.

32. As a result of the Defendant's violations of the FLSA, Plaintiff has suffered damages by being denied minimum wages in accordance with § 206 of the FLSA.

33. Defendant failed to make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff.

34. As a result of Defendant's unlawful acts, Plaintiff has been deprived of earned wages in amounts to be determined at trial, and is accordingly entitled to recover of such amounts, liquidated damages, and any other compensation to which he is entitled pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF IWCA'S PAYMENT OF WAGES UPON SEPARATION
## [I.C. 45-606]

35. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

36. The IWCA provides a statutory basis for employees to pursue claims for unpaid wages against employers.

37. At all relevant times, Defendant was an "employer" as defined by I.C. 45-601(5).

38. At all relevant times, Plaintiff was an "employee" of the Defendant, as defined by I.C. 45-601(4).

39. Upon the Defendant's October 15, 2020 termination of Plaintiff's employment, Defendant violated the IWCA by failing to make available all wages due to Plaintiff within ten days of termination.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

40. Defendant violated the IWCA by refusing Plaintiff's October 16, 2020 letter demanding payment of back wages within forty-eight hours of Plaintiff's request.

41. As a result of Defendant's violations of the IWCA, Plaintiff has been deprived of back wages in amounts to be determined at trial, and is accordingly entitled to recovery of damages in the amount of three times the unpaid wages found due and owing.

## COUNT III
## BREACH OF CONTRACT

42. Plaintiff incorporates the allegations contained in paragraphs above as if fully set forth herein.

43. The Employment Contract constitutes an express contract formed between Defendant and Plaintiff, whereby in exchange for Plaintiff's labor, Defendant would pay Plaintiff a $120,000 base salary plus bonus compensation twice per month and grant him company stock.

44. Defendant breached the 2019 Employment Contract by failing to compensate Plaintiff pursuant to the Employment Contract.

45. As a result of Defendant's breach of the Employment Contract, Plaintiff has sustained damages in an amount to be determined at trial.

## COUNT IV
## UNJUST ENRICHMENT

46. Plaintiff incorporates the allegations contained in paragraphs above as if fully set forth herein.

47. In the alternative, Plaintiff provided Defendant with sales and marketing services, including but not limited to technical writing, research, marketing campaigns and activities at Defendant's request.

48.     Defendant appreciated the benefit conferred upon it by the services provided by Plaintiff at its request.

49.     Despite repeated demand for payment, Defendant refuses to pay Plaintiff the reasonable value of the services he performed at Defendant's request.

50.     It is inequitable for Defendant to accept the full benefit of Plaintiff's services without an exchange of the full corresponding value for that benefit.

## V.   COSTS AND ATTONREY FEES

51.     Defendant's unwarranted and unjustified refusal to compensate Plaintiff for his labor has compelled Plaintiff to retain the services of an attorney to prosecute this action.  As a result, Plaintiff is entitled to recover his attorney fees pursuant to 29 U.S.C. § 216(b), I.R.C.P. 54, Idaho Code §§ 12-120(3), 12-121 and 45-615(2). Plaintiff is entitled to recover his reasonable attorney fees in the sum of not less than four thousand dollars ($4,000.00) if judgment is entered by default, and such other amount as the Court may find reasonable if this matter is contested.

## VI.   JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For an order and judgment against Defendant for back wages, lost benefits and reimbursement for any other of Plaintiff's pecuniary losses;

B. For liquidated damages for unpaid wages found due and owing, pursuant to 29 U.S.C. § 216(b) and I.C. 45-615;

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

C. For compensatory damages to compensate Plaintiff for his emotional distress, loss of enjoyment of life, other non-pecuniary losses in amounts to be established at trial;

D. For Plaintiff's reasonable attorney's fees and costs incurred in bringing this action;

E. For punitive damages in substantial, appropriate, and reasonable amounts;

F. For such further and other relief the court deems appropriate.

The Plaintiff hereby demands a trial by jury of all issues herein.

DATED this 11th day of December 2020.

FISHER HUDSON SHALLAT

/s/ Christopher Brown
Christopher Brown
*Attorney for Plaintiff*

**COMPLAINT AND DEMAND FOR JURY TRIAL - 10**